UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID McCLOY,

                    Plaintiff,

v.

CORRECTION MEDICAL SERVICES,
LAFLER, RIVARD, WASHINGTON,
DOVE, PATTON, AMY BURTON,
DIANE TEMPLE, WILKENSON,
TROMBLEY, THOMSON, MORRIS,
CO PEUTRICH, and CO CHAPELO,

                    Defendants.
_____/

Case No. 07-13839

David M. Lawson
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

**AMENDED REPORT AND RECOMMENDATION**
**MOTIONS TO DISMISS AND SUMMARY JUDGMENT (Dkt. 137, 138)**

## I.    PROCEDURAL HISTORY

Plaintiff, David McCloy, filed this lawsuit against defendants alleging

violations of his constitutional rights pursuant to 42 U.S.C. § 1983.  (Dkt. 1).

Although his initial complaint was not entirely clear, apparently, plaintiff claims

that defendants failed to provide him with regular and necessary insulin injections

for his diabetes.  (Dkt. 1).  Plaintiff filed an application to proceed *in forma*

*pauperis*, which was granted on October 26, 2007.  (Dkt. 5, 7).  District Judge

David M. Lawson referred this matter for all pretrial purposes to Magistrate Judge

R. Steven Whalen on November 9, 2007.  (Dkt. 9).  This matter was reassigned to

the undersigned on January 14, 2008.  (Dkt. 14).  The undersigned previously entered an order designating plaintiff's response to defendants' motions for more definite statement as his amended complaint.  (Dkt. 47, 98).

On May 7, 2009, defendants Amy Burton and Correctional Medical Services (CMS) filed a motion to dismiss based primarily on a defense of failure to exhaust administrative remedies. (Dkt. 137). The remaining defendants, all current or former employees of the Michigan Department of Corrections (MDOC), filed a motion for summary judgment on May 11, 2009, also raising a failure to exhaust defense, among others. (Dkt. 138). After some difficulty in getting an order for response served on plaintiff, he filed a response to these motions on February 22, 2010. (Dkt. 155). On April 1, 2010, the undersigned recommended that the Court grant defendants' motions and dismiss plaintiff's complaint.  (Dkt. 160).

On June 30, 2010, Judge Lawson entered an order assigning plaintiff *pro bono* counsel. (Dkt. 168). On August 2, 2010, Judge Lawson vacated the report and recommendation and remanded the matter to the undersigned for further proceedings. (Dkt. 176). After conducting a telephone conference with counsel for the parties, the Court permitted plaintiff's counsel to file supplemental responses to defendants' motions, which were filed on November 18, 2010. (Dkt. 181, 182). Defendants filed a reply on December 8, 2010. (Dkt. 184). A hearing was held, pursuant to notice, on December 15, 2010. (Dkt. 179).

For the reasons set forth below, the undersigned **RECOMMENDS** that the Court **GRANT** defendants' motions for summary judgment and **DISMISS** plaintiff's complaint against them. The dismissal should be **WITH PREJUDICE** as to all defendants except Wilkinson and Temple.

## II.   STATEMENT OF FACTS

### A.   Grievance Procedure

There were three separate grievance policies in place during the period in which plaintiff filed his grievances, although they contain the same primary requirements. (Dkt. 137, Ex. A, Att. 1-3). Pursuant to the grievance policy, there are four stages that an inmate must satisfy prior to seeking judicial review, each within specific time limits. First, within two days of discovering a grievable issue, the inmate must attempt to verbally resolve the issue with those involved. (Dkt. 137, Ex. A, Att. 1, ¶ R; Ex. A, Att. 2, ¶ P; Ex. A, Att. 3, ¶ P). If this attempted resolution is unsuccessful, the inmate may then file a Step I grievance form within five business days of the attempted resolution. (Dkt. 137, Ex. A, Att. 1, ¶ X; Ex. A, Att. 2, ¶ V; Ex. A, Att. 3, ¶ V). If the inmate is not satisfied with the response at Step I, he may request a Step II appeal form within five days of the response, and has an additional five days within which to file it. (Dkt. 137, Ex. A, Att. 1, ¶ DD; Ex. A, Att. 2, ¶ BB; Ex. A, Att. 3, ¶ BB). If the inmate is dissatisfied with the result at Step II, he has ten business days to appeal to Step III. (Dkt. 137, Ex. A,

Att. 1, ¶ HH; Ex. A, Att. 2, ¶ FF; Ex. A, Att. 3, ¶ FF).  The Step III response

concludes the administrative grievance process set forth in MDOC Policy Directive

03.02.130.  In filing a grievance and/or grievance appeals, an inmate must state the

facts involved with the issue being grieved and must also include the dates, times,

places, and names of all those involved in the issue being grieved. (Dkt. 137, Ex.

A, Att. 1, ¶ T; Ex. A, Att. 2, ¶ R; Ex. A, Att. 3, ¶ R).

The grievance procedure contains several bases on which a grievance must

or may be rejected.  A grievance will be rejected if it raises issues with the

misconduct hearing process.  (Dkt. 137, Ex. A, Att. 1, ¶ F; Ex. A, Att. 2, ¶ F; Ex.

A, Att. 3, ¶ F).  A grievance will also be rejected if it contains profanity, threats of

physical harm, or language which demeans the character, race, ethnicity, physical

appearance, gender, religion or national origin of any person.  (Dkt. 137, Ex. A,

Att. 1, ¶ G; Ex. A, Att. 2, ¶ G; Ex. A, Att. 3, ¶ G).  A grievance may be rejected if

it is vague, illegible, contains multiple unrelated issues, or raises issues that are

duplicative of those raised in another grievance filed by the grievant.  (Dkt. 137,

Ex. A, Att. 1, ¶ G.1; Ex. A, Att. 2, ¶G.1; Ex. A, Att. 3, ¶G.1).  A grievance may

also be rejected if the grievance is filed in an untimely manner.  (Dkt. 137, Ex. A,

Att. 1, ¶G.4; Ex. A, Att. 2, ¶G.4; Ex. A, Att. 3, ¶G.3).

      B.    <u>Grievances at LRF</u>

According to defendants, plaintiff filed 13 grievances while at LRF that were submitted within the three-year period before plaintiff's complaint was filed with this Court. (Dkt. 137-3).[1] The individual defendants employed at LRF are Michael Wilkinson and Diane Temple, who are both registered nurses. (Dkt. 138). According to plaintiff's amended complaint, Temple knowingly forced the wrong insulin dosage on plaintiff and, after the error was discovered, she failed to inform the corrections officers of his dietary needs. Plaintiff also claimed that Temple helped to "attack" plaintiff with incorrect diabetes care and wrote false "misconduct for her misbehavior" while improperly denying insulin two days earlier. (Dkt. 47, p. 4). Plaintiff alleges in his complaint that Wilkinson failed to give proper medical information to the physician, refused to contact the physician, and assaulted plaintiff by giving him the improper insulin for his condition while he was handcuffed. Plaintiff also claims that Wilkinson abused the misconduct process to force bad medical care on plaintiff. (Dkt. 47, p. 5).

Grievance LRF 2005-12-1537-12c involved plaintiff's refusal to cooperate with a psychiatric evaluation and thus does not appear to be related to the claims made against Temple and Wilkinson. (Dkt. 137-8). Grievance LRF 2006-02-160-

---

[1] While the statute of limitations begins to run when the grievance is decided at Step III, not when the grievance is filed, the only older grievance on the grievance inquiry print-out was denied at Step III on June 25, 2004, which would appear to be barred by the three year limitations period given that plaintiff's complaint was not filed until September 12, 2007. (Dkt. 1, 137-7).

28a appears to involve plaintiff attempting to grieve the rejection of another grievance and accusing staff of abuse of power. (Dkt. 137-9). This grievance was rejected for failure to comply with several aspects of the grievance policy, including containing extraneous information, not using the form properly, not requesting any relief, being duplicative of other grievances, and being untimely.

Grievance LRF 2006-01-30-27a also involves plaintiff's attempt to grieve the fact that another grievance he filed was rejected and to grieve the receipt of a misconduct ticket. (Dkt. 137-10). This grievance was rejected for several reasons, including failure to follow the appeal process relating to misconduct tickets and as duplicative. In grievance LRF 2006-03-378-12i, plaintiff requests a roommate to help monitor his blood sugar. (Dkt. 137-11). The grievance was denied at all levels because offenders are not to be used for performing patient care activities. Plaintiff was directed to seek medical assistance in the normal course should he need such care during the night. Grievance LRF 2006-03-00484-07A involves a notice of intent to conduct an administrative hearing regarding plaintiff's tampering with a state-issued headphone/TV extension cord. (Dkt. 137-12). Grievance LRF 2006-05-568-28a involves plaintiff's complaints about unprofessional treatment by non-medical staff and grieving the rejection of another grievance. This grievance was rejected as duplicative and as violating the grievance policy directive. (Dkt. 137-13). Grievance LRF 0-27a involved a misconduct hearing and was reviewed and

rejected directly at Step III by the Manager of the Prisoner Affairs Section, who rejected the grievance because decisions made by a hearing officer are not grievable under the grievance policy. (Dkt. 137-14). Grievance LRF 0-28b was reviewed and rejected directly at Step II by the Manager of the Prisoner Affairs Section, who concluded that the grievance was vague, illegible, and contained extraneous information. (Dkt. 137-15). Plaintiff was directed to rewrite and resubmit the grievance. In this grievance, plaintiff requests that "psy. employees" leave him alone and refers to the "psy. butcher" helping LRF "punish" plaintiff for his diabetic problems.

In Grievance LRF 2006-05-650-28b, plaintiff seems to be complaining about non-medical staff retaliating against him because of the problems his low blood sugar causes. (Dkt. 137-16). Plaintiff's grievance was rejected as vague because plaintiff failed to identify the person being grieved, what they did, and how it violated policy. In Grievance LRF 2006-05-649-28d, plaintiff requested an extra footlocker to store his legal materials. (Dkt. 137-17). This grievance was rejected as violating the grievance policy in several respects. In grievance LRF 0-28c, plaintiff complained about changes in the medication delivery process and the crushing of his pain pills, along with claims of retaliation and other issues. (Dkt. 137-18). Apparently, plaintiff had been placed on modified access at this point. His grievance was rejected directly at Step III for containing multiple issues and

Amended Report and Recommendation
Motions to Dismiss/Summary Judgment
*McCloy v. CMS*; 07-13839

because the staff being grieved could not be identified. Plaintiff was directed to resubmit the grievance separately with staff identified.

In grievance LRF 0-12z, plaintiff complained that "Van Hoten," "Greg," and "Rita" all refused or interfered with his receipt of pain medications. (Dkt. 137-19). This grievance was reviewed directly at Step III and plaintiff was permitted to resubmit the grievance at Step I. In LRF 2006-05-569-28a, plaintiff complains about something being missing from his copy of an administrative hearing report. (Dkt. 137-20). His grievance was rejected as duplicative of another grievance and he was directed to appeal the other grievance. None of the foregoing grievances appear to be related to any of the claims or allegations made against defendants Wilkinson and Temple.

C.    Grievances at DRF

According to defendants, plaintiff filed five grievances while at DRF that were submitted within the three-year period before plaintiff's complaint was filed with this Court. (Dkt. 137-3). The individual defendants employed at DRF are Warden Blaine Lafler and Captain Terry Thomsen. (Dkt. 138). According to plaintiff's complaint, Lafler is responsible for staff's violation of the state and federal disability laws by denying him access to insulin, pain medication, prescription shoes, and bottom bunk detail. Plaintiff also claims that Lafler is responsible for staff's destruction of his legal work, confiscation of his legal duffel

bag, and the refusal to give him a required footlocker. Plaintiff also claims that Lafler is responsible for all the bad behavior of staff and the retaliation against plaintiff by them.

Grievance DRF 2006-10-1080-28c involves plaintiff's complaints about a lack of access to copy services and a law library. (Dkt. 137-21). Plaintiff's grievance was rejected because it was not clear and concise and failed to identify the staff being grieved and the actions of staff being grieved. The rejection was upheld on appeal. Grievance DRF 2007-001-48-28d also contains complaints about the lack of access to the law library and the inability to obtain copies of legal materials for mailing. (Dkt. 127-22). Plaintiff also complained about the librarian doing things incorrectly and stealing. Plaintiff's grievance was rejected for inappropriate language that was demeaning to staff. The rejection was upheld on appeal. Grievance DRF 2007-01-49-28b involved similar allegations and was also rejected as demeaning to staff and vague. The rejection was upheld on appeal. (Dkt. 137-23). In Grievance DRF 2007-01-99-27z, plaintiff complained about a "bogus" ticket written by "Mrs. Unruh" regarding his disabilities. (Dkt. 137-24). This grievance was rejected because it grieved a misconduct ticket, in violation of the policy directive, which was upheld on appeal. In Grievance DRF 2007-01-100-27a, plaintiff claims that he wrote to the Warden to complain about how he was being picked on by staff because of his disabilities through bogus misconduct

tickets. (Dkt. 137-25). Plaintiff also claimed that there was a conspiracy against him and that the Warden was "hiding" behind the misconduct ticket and grievance system. This grievance was rejected because it attempted to grieve misconduct tickets given, in violation of the grievance policy

### D.   Grievance at SRF

According to defendants, plaintiff filed one grievance while at SRF that were submitted within the three-year period before plaintiff's complaint was filed with this Court. (Dkt. 137-3). The individual defendants employed at SRF are Jan Trombley, retired Warden, and Dr. Ann Burton, a CMS physician. (Dkt. 137, 138). According to plaintiff's amended complaint, Dr. Burton "forced time" without the proper insulin and did not inform the nursing staff that plaintiff required a particular kind of insulin. (Dkt. 47, p. 4). Plaintiff also alleged that Dr. Burton failed to inform the warden and staff that their refusal to feed plaintiff would cause him to be hospitalized. Dr. Burton in also alleged to have failed and refused to provide plaintiff with the proper pain medication for his rheumatoid arthritis and a hand injury. *Id*. As to defendant Trombley, plaintiff alleged that she misused MDOC policy to punish plaintiff for avoiding a physical altercation, that she approved lying by staff, and allowed staff to cause "ADA problems." (Dkt. 47, p. 5).

In Grievance SRF 2007-05-2178-28d, plaintiff complains about a physician's assistant H. Tyree, who allegedly tampered with plaintiff's pain medication and is unprofessional and incompetent. (Dkt. 137-26). This grievance was rejected because it demeaned staff and contained language that was unnecessary to the issue being grieved. The rejection was upheld on appeal. Nothing in this grievance appears related to any conduct of defendants Trombley and Burton and the grievance also appears to be unrelated to their alleged conduct as described by plaintiff in the amended complaint.

## III.    ANALYSIS AND CONCLUSIONS

### A.    Standard of Review

While defendants have moved to dismiss and for summary judgment, given the undersigned's reliance on materials outside the four corners of the complaint, the summary judgment standard will be applied. Fed.R.Civ.P. 12(d).  Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the evidence and all reasonable inferences must be construed in favor of the nonmoving party. *Tanner v. County of Lenawee*, 452 F.3d 472, 477 (6th Cir. 2006). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Rule 56 limits the materials the Court may consider in deciding a motion under the rule: "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (citation omitted). Moreover, affidavits must meet certain requirements:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

Fed.R.Civ.P. 56(e)(1). In accordance with Rule 56(e), the Sixth Circuit has held "that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded." *Moore v. Holbrook,* 2 F.3d 697, 699 (6th Cir. 1993). Thus, in resolving a Rule 56 motion, the Court should not consider unsworn or uncertified documents, *Id.*, unsworn statements, *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-969 (6th Cir. 1991), inadmissible expert testimony, *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1280 (6th Cir. 1997), or hearsay evidence, *Hartsel v.*

*Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Wiley v. United States*, 20 F.3d 222,

225-226 (6th Cir. 1994). Thus, "[a] party opposing a motion for summary

judgment cannot use hearsay or other inadmissible evidence to create a genuine

issue of material fact." *Id.*, quoting, *Sperle v. Michigan Dept. of Corrections*, 297

F.3d 483, 495 (6th Cir. 2002) (citation and quotation marks omitted).

      B.    <u>Exhaustion of Administrative Remedies</u>

          1.    Legal standards

     In *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910 (2007), the United States

Supreme Court held that "exhaustion is an affirmative defense, and prisoners are

not required to specifically plead or demonstrate exhaustion in their complaints."

*Id.* at 923. The Court defined the level of detail necessary to exhaust as simply

compliance with the administrative grievance process. *Id.* Moreover, the burden

rests on the defendant to show that a plaintiff failed to exhaust when asserting

exhaustion as an affirmative defense. *Id.* Accordingly, exhaustion is satisfied if

plaintiff complied with the applicable MDOC grievance procedure and defendants

bear the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed.Appx. 461,

462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially

pleading and proving exhaustion; rather, this affirmative defense may serve as a

basis for dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden-the plaintiff on a claim for relief of the defendant on an affirmative defense-his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.

2.      Purpose of exhaustion requirement.

The Supreme Court defines proper exhaustion under 42 U.S.C. § 1997e(a) as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 quoting, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 90-91. The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the

administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id*. at 93, quoting, *Porter v. Nussle*, 534 U.S. 516, 525 (2002) (alteration omitted). Exhaustion serves a dual purpose: it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id*. at 94. Additionally, the exhaustion requirement "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 127 S.Ct. at 915-16.

Before *Jones* invalidated the additional exhaustion procedures placed on prisoner civil rights suits by the Sixth Circuit, a prisoner was required to "file a grievance against the person he ultimately seeks to sue," and exhaust the claim as to each defendant associated with the claim. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001). The critical holding in Jones was that the PLRA does not impose additional exhaustion procedures or requirements outside the prison's grievance procedures. As observed in *Jones*, the primary purpose of a grievance is to alert prison officials of a particular problem. *Jones*, 127 S.Ct. at 923; *see also Bell v. Konteh*, 450 F.3d 651, 651 (6th Cir. 2006) ("[I]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made

against a defendant in a prisoner's complaint."). In *Baker v. Vanderark*, 2007 WL 3244075, *7 (W.D. Mich. 2007), the court held that, under the PLRA and *Woodford*, "both parties are obligated to raise objections in the administrative proceedings in order for the issue to be properly before a reviewing court." The *Baker* court also concluded that a "fair interpretation of PD 03.02.103 gives the Grievance Coordinator discretion to accept or reject a grievance that fails to identify specific defendants on the basis of the grievance being vague." *Id*.

        3.    Plaintiff failed to exhaust his administrative remedies

        (a)    Rejected grievances

All but three (which will be discussed separately below) of plaintiff's grievances at issue were rejected for failure to comply with the MDOC's grievance policy. The undersigned previously concluded as follows:

> Plaintiff has not offered any evidence to suggest that those rejections were improper and, therefore, has failed to create a genuine issue of material fact. Under *Woodford*, plaintiff cannot have exhausted any claims pursuant to those grievances because he did not comply with the grievance policy. *See e.g.*, *Surles v. Andison*, 2009 WL 1607621, *7 (E.D. Mich. 2009). Thus, the undersigned suggests that defendants have satisfied their burden of proving that plaintiff failed to exhaust his administrative remedies with respect to all grievances submitted through Step III of the grievance process by plaintiff during the relevant time period. Judgment in favor of defendants on all claims against all defendants except those employed at the Earnest C. Brooks facility (LRF) should be granted on this basis.

(Dkt. 160, p. 18). Plaintiff's supplemental responses seek to excuse his failure to comply with the grievance procedure or to exhaust through Step III by relying on *Wyatt v. Leonard*, 193 F.3d 876 (6th Cir. 1999) for the proposition that strict compliance with the grievance procedure is not necessary if notice of the issue is given. (Dkt. 181, 182). *Wyatt*, however, is inapplicable to the instant case. In *Wyatt*, the Court held that while the exhaustion requirement is not jurisdictional, that does not mean it is not mandatory. *Id*. at 879. Moreover, the court held that the plaintiff had substantially complied with the grievance procedure because the time process for the administrative procedure had expired *before the amendments to the PLRA took effect*. *Id*. at 880. While plaintiff here claims that he did all in his power to comply, and that defendants prevented him from complying with the grievance procedure, plaintiff offers no evidence to support this claim, not even his own affidavit. Under the circumstances, the undersigned again concludes that plaintiff has failed to establish any genuine issue of material fact that the rejected grievances were not exhausted and defendants are entitled to summary judgment on this basis.

The undersigned also concludes, as previously set forth in the April Report and Recommendation, that plaintiff's claims, to the extent that they are based on *rejected* grievances, should be dismissed *with* prejudice. Ordinarily, a dismissal based on failure to exhaust administrative remedies is made without prejudice. *See*

Amended Report and Recommendation
Motions to Dismiss/Summary Judgment
*McCloy v. CMS*; 07-13839

*e.g.*, *Hicks v. Harrington*, 2008 WL 4791916 (E.D. Mich. 2008). However, "a claim that has been properly rejected by the prison grievance system on procedural grounds should be dismissed from the plaintiff's complaint with prejudice." *Kikumura v. Osagie*, 461 F.3d 1269, 1290 (10th Cir. 2006), overruled on other grounds, *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008). This is so because "[o]nce a prison formally denies an inmate's grievance for untimeliness, and either the inmate does not challenge the basis for that decision or the court upholds the decision, the inmate's failure to exhaust is no longer 'a temporary, curable, procedural flaw.'" *Id.*

This issue has not been squarely addressed by the Sixth Circuit[2] and the undersigned finds that the reasoning of the Tenth Circuit is persuasive. Where a grievance is rejected on procedural grounds and the merits of the grievance were never ruled on by the MDOC because of plaintiff's failure to comply with the

---

[2] Other district courts within the Sixth Circuit have reached similar conclusions since the undersigned's original Report and Recommendation was issued in April 2010. In *Roberson v. Martens*, 2010 WL 3779544, *7 (W.D. Mich. 2010), the Magistrate Judge declined to recommend dismissal with prejudice because the rejection of what would surely be an untimely grievance was a future event. While the court observed that it was "virtually certain that any grievance plaintiff might now file against defendants would be rejected as untimely at Step I, and upheld on that basis at Steps II and III," it also noted that a "grievance so rejected would provide a basis for dismissing plaintiff's claims with prejudice because 'proper exhaustion still requires compliance with the grievance policy's critical procedures such as timeliness.'" *Id.*, quoting, *Vandiver v. Correctional Med. Servs.*, *Inc.*, 326 Fed.Appx. 885, 889 (6th Cir. 2009). The Eastern District of Kentucky also recently concluded that where the plaintiff's grievance was properly rejected before suit was filed, he could not subsequently exhaust his administrative remedies properly, and such claims must be dismissed with prejudice. *Ramirez v. Hungness*, 2010 WL 1839015, *1 (E.D. Ky. 2010).

applicable procedures, the benefits of exhaustion are not met: "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Hicks*, at \*6, quoting, *Jones*, 127 S.Ct at 923; *see also Harris v. Ndife*, 2006 WL 3469552) ("The Supreme Court has recently held [in *Woodford v. Ngo*] that in order to satisfy the requirement that administrative remedies be exhausted prior to filing suit, those remedies must be exhausted properly and within the time frames required by the remedy process. That failure requires dismissal of his complaint, with prejudice.") (internal citations omitted); *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004) ("[I]n the absence of any justification for not pursuing available remedies, [petitioner's] failure to pursue administrative remedies while they were available precluded his federal lawsuits, and they were properly dismissed with prejudice.").

In this case, many of plaintiff's grievances were rejected because they were unduly vague, demeaning to staff, failed to name the staff be grieved, raised multiple issues, raised duplicative issues, and raised issues that are not permitted to be resolved through the grievance process. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly

structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91. After reviewing the grievances, the appeals, and the responses, the undersigned suggests that the grievances were properly rejected, that plaintiff did not correct the violations of the grievance procedure in his appeals or otherwise, and that plaintiff has not offered any evidence in response to the dispositive motions to undermine these conclusions. Whether the procedural flaw is timeliness or some other critical procedural rule set forth in the grievance procedure as set forth in *Woodford*, where the prisoner failed to cure the defect and has not offered any evidence to suggest that he was prevented from doing so, the undersigned suggests that the dismissal of plaintiff's claims, to the extent they are based on rejected grievances, should be with prejudice.

(b)    LRF grievances

As set forth above, defendants Temple and Wilkinson are the only named defendants who worked at LRF. The only grievances filed by plaintiff at that facility during the pertinent time frame, which were pursued through Step III and not rejected, are: (1) grievance LRF 2005-12-1537-12c, which involved plaintiff's refusal to cooperate with a psychiatric evaluation; (2) grievance LRF 2006-03-378-12i, in which plaintiff requested a roommate to help monitor his blood sugar; and (3) grievance LRF 0-12z, in which plaintiff complained that "Van Hoten," "Greg,"

and "Rita"[3] all refused or interfered with his receipt of pain medications. None of these grievances appear to be related to the claims made against Temple and Wilkinson and nothing in them would have given prison officials notice that plaintiff was grieving any actions by them. Thus, the undersigned concludes, again, that plaintiff has failed to exhaust any claim against defendants Wilkinson and Temple and summary judgment in their favor is appropriate.[4]

Based on the foregoing recommendations, the undersigned declines to address the remainder of the arguments raised in defendants' dispositive motions.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Court **GRANT** defendants' motions for summary judgment and **DISMISS** plaintiff's complaint against them. The dismissal should be **WITH PREJUDICE** as to all defendants except Wilkinson and Temple.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right

---

[3] None of the persons identified appear to be defendants in this lawsuit.

[4] As set forth above, a dismissal based on failure to exhaust administrative remedies is ordinarily made without prejudice. *See e.g.*, *Hicks v. Harrington*, 2008 WL 4791916 (E.D. Mich. 2008). Since the grievances at issue with respect to defendants Wilkinson and Temple do not involve rejected grievances, the dismissal as to these defendants should be without prejudice.

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 21, 2011                                s/Michael Hluchaniuk
                                                       Michael Hluchaniuk
                                                       United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 21, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Randall A. Juip, Brian J. Richtarcik, Scott R. Rothermel, Ziyad I. Hermiz, Jonathan F. Jorissen, and Michael J. Lavoie</u>.

<div style="margin-left:40%">

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

</div>